IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 12, 2016

## CLARENCE TYRONE PRUITT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 12-00365     James M. Lammey, Jr., Judge**

---

**No. W2015-02133-CCA-R3-PC  -  Filed September 30, 2016**

---

The petitioner, Clarence Tyrone Pruitt, appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of counsel and entered an unknowing and involuntary guilty plea. After review, we affirm the judgment of the post-conviction court denying the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Patrick Barnes, Memphis, Tennessee, for the appellant, Clarence Tyrone Pruitt.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Carrie Shelton Bush, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The petitioner was indicted for two counts of aggravated rape. Pursuant to a plea agreement, one count was dismissed and he pled guilty to the remaining count in exchange for a sentence of twenty years. At defense counsel's request, the court recommended in its judgment that the petitioner be placed at the DeBerry Special Needs Facility, a facility that has a Sex Offender Unit and a Mental Health Unit.

The facts giving rise to the case were recited by the State at the guilty plea hearing as follows:

Had these matters proceeded to trial, the State's proof would have been on or about June 7th, 2009 . . . [the victim] was walking near her apartment here in Shelby County when she came across an unknown male who asked her to buy beer for him. She did. They were walking across the street together. He attacked her as she had turned her back, dragging her behind a vacant apartment, began choking and hitting her. Threatened to kill her if she didn't stop screaming. Shoved a pen down her mouth causing her to choke and lose consciousness. Then forced pen[ile] vaginal sex on [the victim]. She was injured during the assault. She had a laceration on her right cheek, abrasions and bruises on her neck and collarbone, lacerations below her right breast, left chin, right below her arm, right lower (indiscernible) and received bruises to her genital area.

There was a rape kit taken during her assault exam. There was a DNA profile generated. It was uplifted to CODIS and matched an unknown DNA sample that [the petitioner] had given. So [the petitioner] did match in terms of DNA.

The petitioner filed a *pro se* petition for post-conviction relief and, after the appointment of counsel, an amended petition was filed. In his petitions, the petitioner alleged that he received ineffective assistance of counsel because counsel failed to take his mental illness into account during the guilty plea hearing. In his brief, the petitioner expands this allegation to aver that his guilty plea was unknowingly and involuntarily entered.

At the evidentiary hearing, the petitioner's trial counsel testified that she could not recall specific details of her representation of the petitioner because the Shelby County Public Defender's Office had misplaced her case file after she left the office. However, counsel remembered that the State's case rested primarily on the victim's testimony because there was no one else present. She recalled discussing with the petitioner what the proof would be if they went to trial. At this point, the post-conviction court clarified that the case also involved a positive DNA sample. Counsel for the State then made duplicates of her copy of the discovery materials and allowed the petitioner's trial counsel to review it in order to remind her of the specifics of the case.

Trial counsel testified that she had a mental health evaluation conducted on the petitioner, the results of which were that he had a mental illness but was competent to stand trial. She did not believe the petitioner complained about the result. She did not recall the petitioner's telling her that he was taking any medication but noted that she normally asked her clients if they were doing so. Counsel noted that she typically asked

2

the evaluator to also determine whether her client was acting under diminished capacity at the time of the offense, rather than just competency to stand trial, but she could not recall whether she did so in the petitioner's case. She said that at no point during her interactions with the petitioner did she think that she needed to seek additional expert opinions on his mental status.

Trial counsel testified that the petitioner was level-headed during her representation of him and did not recall a time when he acted funny or strange. She never had a problem communicating with him. Counsel believed that the petitioner understood his plea and was thinking clearly, although she did not ask him if he was taking his medication at the time of the plea. Had the petitioner appeared to be confused or acted as though he had not understood something, counsel said that she would not have proceeded with the plea hearing. She further noted that she would have asked the court for more time if she believed the petitioner was not "grasping the process" during her discussions with him.

With regard to DeBerry Special Needs Facility, trial counsel recalled that the petitioner wanted to go to a facility that offered sex offender rehabilitation. She agreed to request that the petitioner be placed there but explained to him that neither she nor the trial court had the power to ensure he was housed at DeBerry. She believed the petitioner would have still pled guilty even if DeBerry were not an option. Counsel conceded that she failed to follow-up the court's recommendation that the petitioner be placed in DeBerry with a letter of her own, despite having told the court that she would.

Trial counsel recalled that the initial offer from the State was for twenty-five years at 100%. In light of the DNA evidence, counsel believed that the petitioner's chances at trial were poor. She additionally acknowledged that the facts of the case were difficult because of the injuries to the victim and the egregious nature of the offense. Counsel was also aware that at the time of her representation, the petitioner had a prior sex offense which would further complicate matters. He also had a number of prior offenses of dishonesty, which could have been used to impeach him if he had decided to testify. In spite of the difficulties of the case, counsel was able to secure the petitioner a five-year reduction in the State's offer.

The court noted that the record reflected that at one point the petitioner refused to cooperate with the mental health evaluators, and the court had to admonish him to cooperate.

The petitioner testified that he had been prescribed three or four different medications at various times but that, during the pendency of his case, he was prescribed Risperdal and Remeron. Although he was supposed to take his medications every night,

3

he occasionally did not take them because they caused drowsiness. The petitioner claimed that he did not take his medications the night before or morning of his guilty plea hearing. He had trouble remembering exactly when he had taken his medications, noting that his medications were in flux at that time and "[i]t was kind of having [him] off balance and stuff." When discussing the effect his medications had on him, the petitioner noted that he felt "more at ease" when taking them and "aggressive" when not. He claimed that he "probably" would not have pled guilty had he been taking his medications.

The petitioner said he believed that he told trial counsel that he was taking medications. His only memory of the mental health evaluation was of a "lady" asking him if he ever watched "Law and Order." He also claimed that he only met with the evaluators one time. He acknowledged that counsel discussed the results of the evaluation with him, that he was competent to stand trial, but he did not ask her questions about it. He disagreed with the results of the evaluation but did not discuss that with counsel because he "really couldn't focus as much."

The petitioner explained that he wanted to be placed at DeBerry Special Needs Facility because he needed sex offender treatment. With respect to whether he would have pled guilty had he been told DeBerry was not a possibility, he responded as follows:

[The petitioner]: This was one of the things I really wanted to happen is for me to go to DeBerry. And I thought maybe I was going . . . to go there; and that was one of the reasons why that I – out of being incarcerated, you know, and kind of confused at the time, I don't know, I just acted out.

[The State]: Would you have gone to trial in the case?

[The petitioner]: Probably not – I don't know. No.

. . . .

[The petitioner]: I don't think I would have. I don't know. No, probably. Like I say, I wanted to get treatment, and I felt that the system knew that me crying out for treatment, and they didn't act upon that, I felt that that was an injustice. So, that's why that I'm here today. You know. And I suffer now more than anything, you know. That's how I feel now. You know, I feel that by getting treatment, I'm not using my meds or anything as a crutch. I feel that it was unethical, I guess, you know, for the system to know that a person is crying out for help and you deny them that help – or her that help – and sticking me in prison isn't solving anything. You know.

And I understand that you recommended it. Or I felt that he should have been able to order[] it; so, now, I'm in a mental-health unit, which I'm getting no counseling or nothing like that; and chances are, if I make it back out in society, there's no opportunity to use.

On cross-examination of the petitioner, the State clarified that the petitioner would not have taken the case to trial if DeBerry were not an option. The petitioner acknowledged that his options on a Class A felony were to either go to trial or plead guilty, and if he did not want to go to trial the only option left was to plead guilty. He said that he did not want the post-conviction court to order a new trial; he only wanted "to show justice." Asked if he meant justice for himself or for the victim, the petitioner responded, "[T]he victim, she has got justice. I'm serving time for it. So, I feel that now since I'm incarcerated that . . . I'm the victim now of the system. . . . And I feel that the system should, at least, . . . have consideration on my behalf." However, the petitioner acknowledged that the only remedy the court could order was a new trial.

On further cross-examination, the petitioner admitted that he was not presently taking his medication, asserting "they [were] missing one of [his] meds." Asked what happened when he did not take his medication, the petitioner responded that he had problems relaxing. He said that the effects of his medication were drowsiness and sleepiness. The petitioner acknowledged that he remembered pleading guilty and telling the judge that counsel had done everything he had asked her to do, which was true. The petitioner admitted that he had pled guilty to over thirty previous offenses, including a prior sexual offense, and knew what a guilty plea meant before the judge started talking.

The petitioner asserted that he told post-conviction counsel that he "really didn't want to sit in any hearing except if a doctor – an expert could testify before [he] took the stand. And [his] attorney said to go on with the hearing anyway."

After the State's cross-examination, defense counsel indicated that he intended to call an expert witness who had "specialized knowledge with the medications Risperd[a]l and Remeron," but the expert was not available until a later date. The court agreed to continue the hearing but made preliminary findings on the record. The court stated:

[S]ince I've already heard from [the petitioner] and [trial counsel], and I've reread the guilty plea proceedings, he seemed lucid to me; take that with the fact that he refused to cooperate once with these people at West Tennessee [Forensic Services] and that . . . eventually they found him to be competent and that . . . a mental disease or defect did not prevent the [petitioner] from appreciating the nature and wrongfulness of his acts; and the fact that he's got so many previous theft convictions. Some of those were violent thefts –

5

two of them in particular. I have to tell you, I don't believe a single word [the petitioner] has to say. So, this expert has to be really good. But even so, I don't believe [the petitioner], and I just have to put that on the record because . . . by the time we get around to hearing this testimony, I may have forgotten everything that happened today. But after looking at this, and after looking at his record and the guilty plea and hearing his testimony, I don't find him to be credible. He was trying . . . to be evasive and elusive. He was barely mumbling to where you could hear him. He was doing all that on purpose. I don't believe a single thing he has to say. But you're entitled to have the person come in if they are willing to do so.

After the hearing was continued for almost six months, the post-conviction court reconvened the parties, and post-conviction counsel explained that he was unable to convince an expert to testify. There was discussion among the court and the parties that what the petitioner was upset about was that he was not placed at DeBerry Special Needs Facility, but was instead incarcerated after the Department of Correction evaluated him and determined that he did not qualify for DeBerry. The court noted that the petitioner was motivated to take the plea offer despite there being no guarantee of placement in DeBerry because of the high probability that he would be convicted and sentenced to a much longer term after a trial, given his prior record and the seriousness of the offense. The post-conviction court later entered a written order denying the petition.

## ANALYSIS

The petitioner argues that he received ineffective assistance of counsel and entered an unknowing and involuntary guilty plea.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984). The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

The petitioner argues that trial counsel was ineffective for failing to take his mental illness into account during the guilty plea hearing and that he would not have pled guilty had he been properly medicated. We initially note that, after hearing the testimony at the post-conviction hearing, the court found the petitioner to be not credible. Specifically, the court said, "I don't believe a single thing he has to say."

Trial counsel testified that she had a mental health evaluation conducted on the petitioner, and he was deemed competent to stand trial. Counsel said that the petitioner was level-headed during her representation of him and did not recall a time when he acted strange. She never had a problem communicating with him. Counsel believed that the petitioner understood his plea and was thinking clearly. Had the petitioner appeared to be confused or acted like he had not understood something, counsel said that she would not have proceeded with the plea hearing. She further noted that she would have asked the court for more time if she believed the petitioner was not "grasping the process" during her discussions with him. Trial counsel's testimony demonstrates that she did not render deficient performance.

Trial counsel's belief that the petitioner understood the proceedings is supported by the petitioner's own testimony at both the guilty plea hearing and the post-conviction hearing. At the guilty plea hearing, the petitioner testified that he understood the proceedings and had pled guilty multiple times in the past. He was able to articulate his desire to "get the treatment that I need." At the post-conviction hearing, the petitioner admitted that he recalled the guilty plea hearing and, because of past experiences, knew what a guilty plea meant before the judge started talking. With regard to the effect of his medication, the petitioner testified that it made him feel drowsy and "more at ease";

7

whereas, he was more "aggressive" without it. He acknowledged having told trial counsel that he was taking his medication. He never said that the lack of medication rendered him unable to comprehend. The petitioner also admitted that he was not taking his medication at the time of the post-conviction hearing, during which he testified at length and demonstrated his understanding of the proceedings.

Moreover, the petitioner failed to show a reasonable probability that he would not have pled guilty, but instead would have insisted on proceeding to trial, had he taken his medication. Although the petitioner initially testified that he "probably" would have gone to trial had he been on his medication, he also later indicated that a new trial was not what he was seeking. He said that he was seeking "justice" because he thought it was "unethical" for the Department of Correction not to place him in sex offender treatment after he asked for it. He conceded that the offer he received was for half the amount of time he could have received had he proceeded to trial. At the post-conviction hearing, the fact that the petitioner was not taking his medication the day of the guilty plea hearing was little more than an afterthought in his testimony. The evidence supports the post-conviction court's finding that the petitioner received effective assistance of counsel.

The petitioner initially challenged the knowing and voluntary nature of his guilty plea only in the context of ineffective assistance of counsel, but he seemingly asserts it as a separate issue on appeal. Although the petitioner conflates his issues, we will briefly address the nature of his plea separately.

Before a guilty plea may be accepted, there must be an affirmative showing in the trial court that it was voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 242 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). This requires a showing that the defendant was made aware of the significant consequences of the plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Mackey, 553 S.W.2d at 340). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) whether the defendant was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against the defendant and the

penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.  Id. at 904-05.

The record shows that the petitioner was very familiar with criminal proceedings, having previously pled guilty to more than thirty offenses.  He was represented by competent counsel, who conferred with him about his alternatives and negotiated a reasonable deal for him in light of the difficulties of the case.  The court and counsel explained the potential exposure he faced if he were convicted after a trial, which could have been more than double the amount he received with the plea.  At the plea hearing, the petitioner told the court that he was knowingly and voluntarily pleading guilty, that he was satisfied with counsel's representation, and that counsel did everything he asked of her.  The petitioner's testimony at the post-conviction hearing indicates that the effect of his not taking his medication was, at worst, that he was more "aggressive."  The petitioner has failed to demonstrate that his alleged lack of medication rendered his guilty plea unknowing or involuntary.

The petitioner cites to Erika Cienfuegos v. State, No. M2012-01924-CCA-R3-PC, 2013 WL 5436708 (Tenn. Crim. App. Sept. 27, 2013), perm. app. denied (Tenn. Jan. 14, 2014), to assert that, because he did not tell the trial court that he was currently taking his prescribed medication, his plea was unknowing and involuntary.  In Erika Cienfuegos, this court noted that that petitioner had told the trial court that she was currently taking her prescribed medication and determined that her plea was knowing and voluntary.  Id. at *7.  However, we cannot conclude that the petitioner's plea in this case was unknowing and involuntary simply because he was not asked about his medication when all indicators point to his plea being nothing other than knowing and voluntary.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE